**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRANCE MCCALL,** | : | **CIVIL ACTION NO. 3:19-2052** |
| **Plaintiff** | | |
| | : | **(Judge Mannion)** |
| **v.** | | |
| | : | |
| **CARBON SCHUYLKILL** | | |
| **COMMUNITY HOSPITAL, INC., d/b/a** | : | |
| **ST. LUKE'S UNIVERSITY HEALTH** | | |
| **NETWORK,** | : | |
| **Defendant** | | |

**M E M O R A N D U M¹**

Pending before the court is defendant, Carbon Schuylkill Community Hospital, Inc., d/b/a St. Luke's University Health Network's ("defendant") motion to dismiss Plaintiff Terrance McCall's ("plaintiff") amended complaint which raises issues of disability discrimination in employment. For the reasons that follow, the motion to dismiss will be **DENIED**.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant employed plaintiff from November 1994 through August 23, 2018. (Doc. 12, at ¶ 11). Plaintiff began his employment as a billing clerk. (*Id.,* at ¶ 12).

---

¹ This matter has been reassigned to the undersigned following the passing of our colleague, the Honorable James M. Munley, in March of this year.

In his twenty-four years of employment, defendant promoted him twice, and he held the position of financial counselor when defendant terminated his employment. (*Id.*)

The circumstances surrounding plaintiff's termination began on June 27, 2017, when he fractured his ankle. (*Id.*, at ¶ 13). He underwent surgery on July 3, 2017, with the insertion of stabilizing pins into his ankle. (*Id.*) He returned to work on July 5, 2017. (*Id.*, at ¶ 14). Plaintiff's healing did not proceed smoothly, and he developed osteomyelitis, an infection of the bone in his ankle. (*Id.*) He needed two more surgeries to remove the pins. (*Id.*) Plaintiff still remained symptomatic after these surgeries, although he missed a minimal amount of work between the breaking of his ankle and November 2017 at which time he went to a new doctor. (*Id.*, at ¶¶ 15-16). The new doctor performed surgery on plaintiff in December 2017 and inserted eighteen pins into his leg which were connected to an external apparatus. (*Id.*, at ¶¶ 15-17).

After the surgery, plaintiff's physician cleared him to return to work as his position was sedentary in nature. (*Id.*, at ¶ 17). Defendant, however, did not allow plaintiff to return, allegedly because of the apparatus that remained attached to plaintiff's leg. (*Id.*) Plaintiff then asked for a medical leave of absence pursuant to the Family and Medical Leave Act (hereinafter "FMLA"). (*Id.*, at ¶ 18). Defendant granted the leave. (*Id.*) While plaintiff was still on leave in February 2019, the

2

defendant informed him that they intended on filling his position. (*Id.*, at ¶19). Plaintiff believed his position would only be filled temporarily until he returned to work. (*Id.*) When plaintiff's federally protected FMLA leave expired in February 2018, he remained on a medical leave through the defendant's own medical leave policy. (*Id.*, at ¶ 22).

In May 2018, plaintiff's physician removed the apparatus from his leg, and plaintiff notified the defendant that he could return to work as soon as possible. (*Id.*, at ¶ 20). Defendant's Human Resources Director told plaintiff that his position had been filled, but they would inform him if another position became available. (*Id.*, at ¶ 21). Plaintiff waited thus for an open position and remained on medical leave of absence pursuant to his employer's medical leave program. (*Id.*)

The Human Resources Director informed plaintiff on August 16, 2018 that his medical leave would expire in two days, on August 18, 2018. (*Id.*, at ¶ 23). Plaintiff told her that he was ready to return to work, but the Human Resources Director told him that no positions were available. (*Id.*)

On August 23, 2018, plaintiff again reiterated to defendant that he had the ability to return to work and provided further documentation from his doctor. (*Id.*, at ¶ 24). Defendant, however, informed him that his employment was terminated for exceeding his available medical leave. (*Id.*, at ¶ 25).

3

Based upon these facts, plaintiff filed the instant lawsuit, which raises the following three causes of action: Count I – Disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"); Count II – Disability discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA"); and Count III – Retaliation under the Family and Medical Leave Act ("FMLA").

In response to the amended complaint, defendant filed a motion to dismiss all counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have briefed their respective positions, bringing the case to its present posture.[2]


## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under

---

[2] Defendant filed its brief in support of the motion on April 3, 2020. (Doc. 15). Plaintiff filed his opposition brief on April 17, 2020. (Doc. 19). Defendant has not filed a reply brief, and the time for such filing is passed. *See* MIDDLE DISTRICT OF PENNSYLVANIA LR 7.7 ("A brief in reply to matters argued in a brief in opposition may be filed by the moving party within fourteen (14) days after service of the brief in opposition.").

any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting* Phillips *v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." *Fowler, supra*, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoted case omitted).

5

## III. DISCUSSION

The motion to dismiss raises the following two issues: 1) Whether dismissal of the disability discrimination claims in Counts I and II is appropriate where plaintiff has failed to properly allege that he was medically cleared to return to work; and 2) Whether plaintiff has adequately pleaded an adverse employment action so as to sustain a cause of action in Count III for violation of the FMLA. We will address each issue separately.

### A. Disability Discrimination – Counts I and II

Count I of plaintiff's amended complaint alleges a cause of action for disability discrimination in employment under the Americans With Disabilities Act, ("ADA"), 42 U.S.C. §12112.[3] Pursuant to the ADA, an employer cannot discriminate against a qualified individual with a disability because of his disability in regard to his employment. 42 U.S.C. §12112(a). The elements of a discrimination case under the ADA are: (1) plaintiff is disabled within the meaning of the ADA; (2) plaintiff is otherwise qualified to perform the essential functions of

---

[3] Count II of plaintiff's amended complaint asserts a disability discrimination claim under the PHRA. Pennsylvania courts interpret the PHRA in the same manner as its federal counterparts such as Title VII. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts ..."). Our analysis of the ADA claim, therefore, will apply also to plaintiff's PHRA claim.

6

the job, with or without reasonable accommodations by the employer; and (3) plaintiff has suffered an otherwise adverse employment decision as a result of discrimination. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir.1996); *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999). Defendant challenges whether plaintiff has alleged the second element, that is, whether plaintiff was qualified to return to his employment.

According to plaintiff's amended complaint, his doctor removed the apparatus from his leg and released him for work in May of 2018. (Doc. 12, Am. Compl. at ¶ 20). Plaintiff's amended complaint alleges that he was able and prepared to return to work from May 2018 through the date of his termination but that the defendant inexplicably would not allow him to return. (*Id.,* ¶¶ 20-25). Defendant argues that plaintiff has not properly supported these claims, and the documentation that is available indicates that plaintiff's allegations lack merit.

Defendant relies on two exhibits attached to its motion to dismiss,[4] to argue that plaintiff was not qualified for any open positions during the relevant time frame. Before we address the factual disputes that defendant has raised, we must determine if we can examine the exhibits in deciding a motion to dismiss.

---

[4] Defendant attached these exhibits to the motion to dismiss the original complaint but failed to attach them to the motion to dismiss the amended complaint. (*See* Doc. 10-1, Doc. 10-2). We shall refer to them as if they had been properly attached to the instant motion to dismiss.

Generally, at the motion to dismiss stage, the court can rely only upon are the complaint, exhibits attached thereto and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  An exception exists to the general rule for documents which are integral to or explicitly relied upon in the complaint. *Id.* The question then becomes whether the exhibits defendant relies upon are integral to plaintiff's complaint.

Here, the exhibits are notes from the plaintiff's doctor regarding his progress and his ability to return to work. (*See* Doc. 10-1, Doc. 10-2). We find that such exhibits are not integral to plaintiff's claim. They are not documents, such as a contract, providing the basis for a cause of action. Rather, they are medical records which may or may not support the factual assertions in plaintiff's complaint. We find, therefore, that it is not proper to rely on these documents at the motion to dismiss stage. Because defendant's arguments rely on the documents which we will not examine, we must reject its arguments.

Even if we were to rely upon the defendant's exhibits, factual disputes exist because plaintiff asserts that the exhibits actually support his position that he could, in fact, return to work with reasonable accommodations. It is too early in the litigation to make such factual determinations.

Defendant further relies upon the absence of a document. The complaint alleges that plaintiff's doctor released him to work in mid-May 2018. (Doc. 12, Am.

Comp. at ¶ 20). Defendant asserts that plaintiff has provided no support for this assertion and that the claim is false. The defendant has cited to no cases, and our research has uncovered none, which hold that at the motion to dismiss stage a plaintiff must present documentation to establish that he is medically qualified to perform his employment. In fact, the cases upon which the defendant relies were both decided at the summary judgment stage. *See Dogmantis v. Capital Blue Cross,* 413 F. Supp. 2d 452 (E.D. Pa. 2005); *Davis v. Thomas Jefferson Univ.,* Civ. No. 14-4300, 2015 WL 4130491 (E.D. Pa. July 9, 2015).

In the instant case, discovery has not yet been completed, however, and plaintiff indicates that he is still awaiting his full medical record. (Doc. 19, Pl.'s Oppo. Br. at 5, n.1).  It is too early in the proceedings to penalize the plaintiff for failing to provide documentation to support the claims in his complaint.

Defendant's motion to dismiss Counts I and II, with regard to whether plaintiff has sufficiently pleaded that he was qualified for a position, will be denied. It is inappropriate to examine the exhibits to which defendant refers, and even if we did, questions of fact would be present, which we cannot determine at this stage of the proceedings.

## B. Count III, FMLA retaliation

The third cause of action asserted in plaintiff's amended complaint is for retaliation in violation of the FMLA. (Doc. 12, Am. Compl. at ¶¶ 35-38). Plaintiff

9

asserts that the defendant terminated his employment in retaliation and retribution for his exercise of his FMLA rights. (*Id.*, at ¶ 36). The FMLA entitles "employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. §2601(b)(2). "Eligible employees are entitled to '12 workweeks of leave during any twelve-month period.'" *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (quoting 29 U.S.C. §2612(a)(1)).

The FMLA contains two distinct provisions prohibiting employers from: (1) interfering with an employee's exercise of their right to take reasonable leave for medical reasons; and (2) discriminating or retaliating against an employee who exercises this right. 29 U.S.C. §2615(a); *see also Lichtenstein*, 691 F.3d at 301 (explaining that under the FMLA, employers may not interfere with, restrain, or deny the exercise of or attempt to exercise FMLA rights, and employers may not discharge or in any other manner discriminate against any individual for opposing any practice made unlawful) (internal quotations omitted); *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) (same). Stated differently, interference claims derive from the denial of some benefit or protection afforded by the FMLA, whereas retaliation actions pertain to whether an employer used an employee's FMLA leave as a negative factor in its decision to terminate her employment. In the instant case, plaintiff alleges a claim of retaliation.

10

A plaintiff sufficiently alleges a *prima facie* case of FMLA retaliation where he alleges: 1) he took FMLA leave; 2) he subsequently suffered an adverse employment action; and 3) the adverse employment action is causally related to his FMLA leave. *Conoshetti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). Defendant challenges both whether plaintiff has sufficiently alleged an adverse employment action and a causal connection between that action and plaintiff's leave. We will address each in turn.

### 1. Adverse employment action

Defendant asserts first that plaintiff cannot establish that he suffered an adverse employment action. Defendant's reasoning is that at the time of his termination, plaintiff could not perform the essential functions of his job. Defendant's argument is based on the same analysis that it provided to establish that plaintiff was not qualified for his position regarding the ADA claim. As we explained above, defendant's position lacks merit and whether plaintiff was qualified for his position at the time of his termination or prior to that time is a question of fact which cannot be determined at the motion to dismiss stage.

### 2. Causal relationship

Next, defendant argues that the plaintiff cannot establish a causal relationship between his termination and his FMLA leave. Defendant's position is that according to the amended complaint, plaintiff's FMLA leave expired in

February 2018[5] and his termination occurred six months later in August 2018. No factual allegations establish any animus or causal connection between the two events. Plaintiff alleges that the amended complaint adequately alleges causation. After a careful review, we agree with the plaintiff.

The law provides that causation may be established "when only a short period of time separates the aggrieved employee's protected conduct and an adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 189-90 (3d Cir. 2005). If, however, the temporal proximity between the protected conduct and the adverse decision is not unusually suggestive, the issue becomes whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." *Lichtenstein*, 691 F.3d at 307.  A pattern of antagonism coupled with timing may establish such a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "Whether a causal link exists must be considered with a careful eye to the specific facts and circumstances encountered." *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (internal quotation marks and citation omitted).

---

[5] The Amended Complaint is not precise as to the date plaintiff's FMLA leave ended. In its brief, defendant indicates that the FMLA leave expired on February 10, 2018. (Doc. 15, Def.'s Br. at 14). For purposes of this motion, we will accept this date as the date the FMLA leave ended.

To determine the temporal proximity between the adverse employment action and the protected conduct, it is necessary first to determine what the adverse employment action was. Defendant focuses on plaintiff's termination as the adverse employment action, but the adverse employment action may have actually occurred months before the official termination when defendant hired someone else to replace plaintiff.

Plaintiff asserts that he sought to return to work in December of 2017, which defendant would not permit, and which caused him to take FMLA leave. (Doc. 12, Am. Compl. at ¶¶ 17-18). Then in or around the time plaintiff's FMLA leave ended in February 2018, defendant informed him that they intended to fill his position. (*Id.*, at ¶ 18). Defendant has argued generally that the reason that plaintiff could not return to work was that no open positions were available. It can be inferred that the reason that no open position existed was because plaintiff's position had been permanently filled. Therefore, the filling of plaintiff's position can be viewed as an adverse employment action. *See Budhun*, 765 F.3d at 258. (Finding an adverse employment action where the employer started a search to fill the employees position shortly before her FMLA leave ended with the new employee starting two days after the leave ended).   Here, the adverse employment decision to permanently fill plaintiff's position, took place at or around the time his FMLA ended in February 2018. The timing is unusually suggestive even though defendant did

13

not officially terminate the plaintiff for six months after the FMLA leave ended. Temporally, the adverse employment action and the end of plaintiff's FMLA leave were closely related and causation can be inferred. *Fasold*, 409 F.3d at 189-90.

Moreover, plaintiff has generally asserted a pattern of antagonism. After working for the defendant for twenty-four years with an exemplary record, (Doc. 12, Am. Compl., at ¶ 12), defendant continually refused his requests to return to work. They in effect forced him to take FMLA leave, replaced him, and then refused to allow him to return to his employment despite repeated requests and medical approval to return to work. Such a history of antagonism may also establish causation. *Lauren W. ex rel. Jean W*, 480 F.3d at 267. Accordingly, we find that plaintiff has properly alleged causation, and defendant's motion to dismiss Count III will be denied.

## IV. CONCLUSION

Based upon the above reasoning, we find that defendant essentially argues the facts of the case, which is not proper at this stage of the proceedings. Plaintiff has properly alleged clams for ADA and PHRA disability discrimination as well as FMLA retaliation. Accordingly, defendant's motion to dismiss will be denied. An appropriate order follows.

s/*Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 2, 2020**
19-2052-01

15