# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRANCE MCCALL,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:19-2052** |
| **v.** | : | **(JUDGE MANNION)** |
| **CARBON SCHUYKILL** | : | |
| **COMMUNITY HOSPITAL, INC.,** | | |
| **d/b/a ST. LUKE'S UNIVERSITY** | : | |
| **HEALTH NETWORK,** | | |
| | : | |
| **Defendant** | | |

## MEMORANDUM

Before the court is defendant, Carbon Schuylkill Community Hospital, Inc. d/b/a St. Luke's University Health Network's ("St. Luke") motion for summary judgment. (Doc. 43). For the following reasons, the motion will be **GRANTED** in part and **DENIED** in part.


## I.     BACKGROUND

Plaintiff Terrance McCall ("McCall") was hired by St. Luke's on November 21, 1994, and during the timeframe relevant to this matter, held the position of Skilled Nursing Account Representative. (Doc. 55-1 at ¶1, Doc. 55-4; Doc. 55-2). In this position, McCall was responsible for assisting

St. Luke's long-term care patients with managing their finances. *Id.*; (Doc. 22 at 14:11-24).

In June of 2017, McCall sustained a non-work-related injury to his right ankle. *Id.* at ¶3. McCall testified that around July of 2017, he performed his duties as a Skilled Nursing Account Representative from a wheelchair. (Doc. 55-2 at 17:19-18:3). St. Luke's Director of Human Resources, Jennifer Stehman ("Stehman"), in an email dated October 19, 2017, noted that St. Luke's had "permitted him to come to work for 4 months in a wheel chair" and expressed "concerns regarding his performance upon his return for his last hospitalization." (Doc. 55-10). On November 20, 2017, McCall came under the care of Dr. Kathryn O'Connor ("Dr. O'Connor") of Penn Medicine Orthopaedics ("Penn Medicine") for the treatment of his injury. *Id.* at ¶4.

On November 20, 2017, McCall requested leave under the Family and Medical Leave Act ("FMLA") due to anticipated surgeries on his right ankle. In a Leave of Absence Request Form, Dr. O'Connor indicated that McCall would be incapacitated from "November 21, 2017 through May 21, 2018" although he would be "able to work from home or office from 11/21/17-5/21/18 sedentary work only non weight bearing." *Id.* at ¶5; (Doc. 44-3 at 5). In a letter dated November 29, 2017, St. Luke's informed McCall that he was eligible for FMLA leave. *Id.* at ¶6. The hospital further noted that if McCall

exhausted his FMLA leave, he may be eligible for a medical leave of absence under St. Luke's Medical Disability Policy. *Id.*

Under the Medical Disability Policy, eligible employees are permitted to take medical leave of absence up to a maximum of 270 consecutive days due to any injury, illness, or other disability. (Doc. 44-6). Such medical leave of absence ran concurrently with FMLA leave. (Doc. 55-1 at ¶8; Doc. 44-1 at 13:6-10). The Medical Disability Policy provides that an employee on a medical leave of absence who wishes to return to work must provide a return to work note from his provider, and the "note must list the date the employee is able to return to work [and] any accommodations that may be required to safely return to work." (Doc. 44-6). Separately, St. Luke's Leave of Absence Policy provides that once FMLA leave is exhausted, St. Luke's "cannot guarantee the employee a position, but whenever possible, will attempt to allow the employee's job to remain open so that the employee may return to it." (Doc. 55-26 at 4). In the event that the employee's position is no longer available when an employee is cleared to return to work, "the employee will have an additional 30 days beyond their medical release date to look for another position within the network." *Id.* at 6.

On December 13, 2017, Dr. O'Connor indicated in a medical note that McCall was "in the midst of a limb salvage procedure" and that she "would

like to keep him out for the next 3 weeks." (Doc. 55-15). Weeks later, on December 28, 2017, Dr. O'Connor wrote in a medical note that McCall would be "out of work for several months" due to an ankle fusion. (Doc. 55-16).

On February 20, 2018, Stehman informed McCall that his FMLA entitlement expired on February 10, 2018, and that he may be eligible for the 270-day medical leave of absence, which would expire on August 18, 2018. (Doc. 44-8). She further stated that St. Luke's would be seeking a replacement for McCall and observed that while St. Luke's "make[s] every effort to hold the employee's position during a medical leave of absence, the employee's position may be filled when…a replacement is necessary to continue normal operations." *Id*. She also noted that McCall's employment status would remain active and there would be no change to his benefit package during his medical leave of absence. *Id*. McCall was aware that his FMLA leave expired on February 20, 2018. (Doc. 55-1 at ¶12).

On March 6, 2018, Dr. O'Connor wrote in a medical note that McCall "is on course for his recovery at this time" and that his physicians "hope for him to return to work on 5/21/18, but he could possibly return to work later than that date." (Doc. 55-1 at ¶15; Doc. 44-10).

McCall testified at his deposition that Dr. O'Connor provided verbal clearance for him to return to work in April 2018 and written clearance in May

2018. (Doc. 55-1 at ¶18; Doc. 55-2 at 82:11-83:10). During discovery in this instant action, McCall and St. Luke's were unable to produce a medical record of Dr. O'Connor's clearance for McCall to return to work in April or May 2018. (Doc. 55-1 at ¶20).

On August 18, 2018, McCall's medical leave expired. (Doc. 55-21). On the August 23, 2018, Dr. Lauren McGarrity ("Dr. McGarrity") indicated in a medical note that McCall underwent right ankle surgery on 8/10/18, and that "[d]ue to his recovery he is able to work sedentary duty at this time only." (Doc. 55-20 at 2). By a letter dated the same date, St. Luke's notified McCall that his employment with the hospital is terminated effective August 23, 2018. *Id.* at 2. Later, around fall of 2018, McCall's ankle bone became reinfected, and his right leg underwent amputation. (Doc. 55-1 at ¶27).

In connection with the events underlying the instant case, McCall filed two Charges of Discrimination under the Americans with Disabilities Act ("ADA") with the U.S. Equal Employment Opportunities Commission ("EEOC"). (Doc. 58-2). In response to the Charges of Discrimination, the EEOC issued Dismissals and Notices of Rights on March 20, 2019 and November 4, 2019, each of which indicated that the EEOC was unable to conclude a statutory violation. *Id.* at 2, 6. On November 3, 2019, St. Luke's entered into a Settlement Agreement with the EEOC (the "EEOC Settlement

Agreement"), wherein it agreed to modify its Medical Disability Policy and Leave of Absence Policy to "reflect that employees may request, as a reasonable accommodation under the ADA, a reasonable extension to any medical leave of absence." (Doc. 55-27).

McCall commenced this suit on December 2, 2019. (Doc. 1). On March 6, 2020, McCall filed an amended complaint asserting against St. Luke's claims of disability discrimination and retaliation under the ADA, 42 U.S.C. §12101 *et seq.*, (Count I), disability discrimination and retaliation under the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.*, ("PHRA") (Count II), and retaliation under the Family Medical Leave Act, 29 U.S.C.A. §2601 *et seq.* ("FMLA") (Count III). (Doc. 12). St. Luke's filed a motion to dismiss McCall's amended complaint on March 20, 2020, which this court denied by a memorandum and order dated September 2, 2020. (Doc. 26, 27).

On October 7, 2021, St. Luke's filed the instant motion for summary judgment, (Doc. 43). As the parties have fully briefed St. Luke's instant motion, it is ripe for the court's review. (Docs. 47, 55, 58, 61).

## II.   STANDARD OF REVIEW

The defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Summary judgment is appropriate when the

pleadings and any supporting materials, such as affidavits and other documentation, show that there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Furthermore, "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, (1990); *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994) (*quoting Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992)). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of any material fact, but the nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in the pleadings. *Celotex Corp.*, 477 U.S. at 323, 325; *Anderson*

- 7 -

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52, (1986); *Young v. Quinlan*, 960 F.2d 351, 357 (3d Cir. 1992).

To determine whether the nonmoving party has met its burden, the court must focus on both the genuineness and the materiality of the factual issues raised by the nonmovant. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 242, 247–48 (emphasis in original). A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.* at 250. A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, (1968)). All inferences, however, "should be drawn in the light most favorable to the non-moving party, and where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore,* 24 F.3d at 512 (*quoting Big Apple BMW, Inc. v. BMW of N. America, Inc.*, 974 F.2d 1358,

- 8 -

1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993)).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *see also Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) ("Summary judgment is inappropriate when a case will turn on credibility determinations."). "[T]he non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III.   DISCUSSION

### a. *ADA Discrimination and Retaliation Claims (Count I)*

#### i. *McDonnell-Douglas Framework is the Applicable Legal Standard*

The ADA prohibits discrimination "against a qualified individual on the basis of disability" as it relates to his or her employment. 42 U.S.C. §12112(a). Further, under the ADA's prohibition against retaliation provision, the statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by

this chapter or because such individual made a charge…under this chapter."

42 USCA §12203(a).

ADA discrimination and retaliation claims may be established through direct or circumstantial evidence. "Direct evidence means evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the protected activity] in reaching their decision." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 n.10 (3d Cir. 2004) (alterations in the original) (internal quotations marks and citation omitted). "[E]vidence is not direct when the trier of fact must *infer* the discrimination…" *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994) (citations omitted) (emphasis in original). Absent direct evidence, ADA discrimination and retaliation claims are evaluated under the *McDonnell Douglas* burden-shifting framework. *Gavurnik v. Home Properties, L.P.*, 227 F.Supp.3d 410, 416 (E.D. Pa. 2017), *aff'd.* 712 Fed.Appx. 170 (3d Cir. 2017); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

In the present case, McCall asserts that his ADA claims prevail under a theory of direct evidence. (Doc. 55 at 15-16). Specifically, he argues that St. Luke's Medical Disability and Leave of Absence Policies (together, the "Policies") constitute direct evidence of discrimination, as they "did not allow for an extension of job-protected leave as a reasonable accommodation" and

thus "violated the ADA". *Id.* In support of his position, McCall asserts that the EEOC had previously found the Policies to be in violation of the ADA by way of the EEOC Settlement Agreement, wherein St. Luke's agreed to modify its Policy to reflect that "employees may request, as a reasonable accommodation under the ADA, a reasonable extension to any medical leave of absence." (Doc. 55-27).

The court does not find that the Policies present direct evidence of discrimination under the ADA. Initially, insofar McCall argues that a "no-fault" leave policy violates the ADA, he fails to provide any support for his assertion. Instead, McCall appears to allude to an EEOC enforcement guideline from 2002, which provides in relevant part:

> May an employer apply a "no-fault" leave policy, under which employees are automatically terminated after they have been on leave for a certain period of time, to an employee with a disability who needs leave beyond the set period?

> No. If an employee with a disability needs additional unpaid leave as a reasonable accommodation, the employer must modify its "no-fault" leave policy to provide the employee with the additional leave, unless it can show that: (1) there is another effective accommodation that would enable the person to perform the essential functions of his/her position, or (2) granting additional leave would cause an undue hardship. Modifying workplace policies, including leave policies, is a form of reasonable accommodation.

*See EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, 2002 WL 31994335, *15, 19 (Oct. 17, 2002). However, such guideline does not provide that "no-fault" leave policies necessarily violate the ADA, but rather that they must be modified if a disabled employee needs additional leave and meets certain conditions.

Furthermore, the EEOC Settlement Agreement does not by itself demonstrate that the EEOC has found the Policy to be in violation of the ADA as it does not go so far as to state such a violation. To the contrary, the EEOC, in response to McCall's Charges of Discrimination under the ADA, stated that it was unable to conclude a statutory violation. (Doc. 58-2).

Accordingly, the court does not find that the Policies prove, without further inference, the existence of discriminatory or retaliatory conduct on the part of St. Luke's. McCall, moreover, has not pointed to any evidence that is 'so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production.'" *Buchsbaum v. Univeresity Physicians Plan*, 55 F.App'x 40, 45 (3d Cir. 2002) (describing direct evidence that an employee must produce at summary judgment stage to warrant a "mixed-motive" analysis).

- 12 -

As such, McCall does not present any direct evidence of discrimination. His discrimination and retaliation claims will thus be evaluated under the *McDonnell Douglas* framework.

The *McDonnell Douglas* burden-shifting framework proceeds in three stages. *Speer v. Norfolk Southern Ry. Corp*, 121 Fed.Appx. 475, at 446-7 (3d Cir. 2005). First, the plaintiff must establish a *prima facie* case of discrimination. *Id.* "If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (internal quotations omitted). If the defendant employer satisfies this burden, "the plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citations omitted). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Williams*, 380 F.3d at 759 n. 3.

### i.   Prima Facie Case for ADA Discrimination

To establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must show that he: "(1) is disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable

accommodations by her employer; and (3) has suffered an adverse employment action as a result of her disability, including her employer's refusal to make reasonable accommodation for her disability." *Petti v. Ocean County Board of Health*, 831 Fed.Appx. 59, 63 (3d Cir. 2020) (citation omitted). The ADA defines a "disability" with respect to an individual as: "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. §12102(1).

St. Luke's asserts that McCall cannot establish a *prima facie* case of disability discrimination because he was not an "otherwise qualified individual" under the ADA. The court disagrees and finds that such a determination cannot be made on St. Luke's summary judgment motion.

An employee is an otherwise qualified individual under the ADA if he satisfies the following requirements: (1) "[that he] has the requisite skill, experience, education and other job-related requirements" and (2) "[that] with or without reasonable accommodation, [he] can perform the essential functions of that position." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 612 (3d Cir. 2006) (*citing* 29 C.F.R. §1630.2(n)). "[T]he plaintiff bears the burden of proving that…he is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of h[is] burden of persuasion, that an

effective accommodation exists that would render h[im] otherwise qualified." *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 670 (3d Cir. 1999) (citation omitted).

"The determination of whether an individual with a disability is qualified is made at the time of the employment decision." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (*quoting* 29 C.F.R. pt. 1630, App. at 353–54). "To qualify as an adverse employment action in the discrimination context, an action must create 'a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a significant change in benefits.'" *Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd.*, 704 F. App'x 164, 168 (3d Cir. 2017) (*quoting* *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Here, it is undisputed that McCall possessed the requisite skill, experience, or education for the job. The court thus proceeds to consider whether there is a genuine material factual issue regarding his ability to perform the essential functions of his job with or without reasonable accommodation. Upon review of the record, the court finds that such a factual dispute exists.

McCall asserts that he was a qualified individual during each of the following times: on February 20, 2018, when St. Luke's formally began to seek a replacement for his position, in May 2018, when his position was allegedly filled and no longer available, and on August 23, 2018, when he was officially terminated.

While St. Luke's formally began to seek a replacement for McCall on February 20, 2018, the posting of McCall's position did not result in a change to his employment status or benefits. (Doc. 55-17). McCall fails to point to evidence suggesting the posting of his position in February 2018 was sufficiently "severe and concrete to affect the compensation, terms, conditions, or privileges of employment." *Sconfienza v. Verizon Pennsylvania Inc.*, 307 F. App'x 619, 621-22 (3d Cir. 2008) (citation omitted). However, the court finds a triable factual issue as to whether the relevant employment decision occurred as early as in May 2018. Stehman testified at deposition that McCall's position was filled in May 2018. (Doc. 55-24 at 80:20-24). McCall's supervisor Deborah Holmberg ("Holmberg") testified that, as of August 2018, she and another coworker were filling in for McCall's responsibilities. (Doc. 55-25 at 87:4-22). A reasonable jury could conclude on the basis of Holmberg's testimony that McCall's position had not yet been formally filled in August 2018. Consequently, there is a triable factual issue

as to whether McCall's position was filled, and a significant change to McCall's employment status had occurred, in May 2018. Thus, the pertinent inquiry is whether McCall was a qualified individual either in May 2018 when his position was allegedly filled, or on August 23, 2018 when he was formally terminated.

St. Luke's contends that McCall cannot establish that he was able to perform the essential functions of his job because he failed to produce evidence of medical clearance to return to work before the expiration of his medical leave of absence. Specifically, St. Luke's points out that two discovery requests for McCall's medical records from Penn Medicine Orthopedics produced over one thousand responsive documents, none of which indicates that a physician cleared McCall to return to work in April 2018 or May 2018, as McCall claims. (Doc. 44-12). McCall contends that a lack of documentary proof of McCall's medical clearance to return to work in April 2018 or May 2018 is not conclusive of whether he was actually cleared or able to return to work during those months. In support of his position, McCall points to his own deposition testimony wherein he testified that his physician verbally cleared him to return to work in April 2018 and gave him written clearance to return in May 2018.

The court finds sufficient evidence to preclude summary judgment on whether McCall was able to perform the essential functions of his job in May or August 2018. As an initial matter, because the parties contest whether being able to perform non-sedentary tasks constitutes an essential function of McCall's job as a Skilled Nursing Account Representative and the relevant job description is ambiguous as to this point, there is a triable issue as to the essential functions of McCall's position. (Doc. 55-4).

The court observes that there is a material factual dispute as to whether McCall was able to perform the essential functions of his position at the time of his termination on August 23, 2018, as it is undisputed that Dr. O'Connor, by a medical note dated August 23, 2018, indicated that McCall was "able to work sedentary duty at this time." (Doc. 55-20).

Further, there appears to be triable issue as to whether McCall was able to perform the essential functions of his job in May 2018. In reaching this determination, the court recognizes that McCall's theory of this case depends in part upon inadmissible evidence. *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F.Supp. 474, 482 (D. N.J. 1995) ("It is well settled that only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment") (*citing* Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 471 (3d Cir. 1989)).

Specifically, McCall's deposition testimonies that he received verbal clearance from his physician to return to work in April 2018 and written clearance in May 2018 run afoul of the Federal Rules of Evidence insofar they are offered to prove his medical clearance. First, McCall's testimony regarding receiving verbal clearance in April 2018 constitutes a hearsay statement. "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." *Shelton v. University of Medicine & Dentistry of N.J.*, 223 F.3d 220, 223, n. 2 (3d Cir. 2000) (citation omitted). "[A] party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to the hearsay rule, or that the material is not hearsay." *Damiano v. Scranton Sch. Dist.*, 2016 WL 3227254, *3 (M.D. Pa. June 13, 2016) (citations omitted). "It is not the burden of the court, but the plaintiff, to identify which hearsay exceptions apply to each of the combined statements provided by the plaintiff in her affidavit." *Id*. Here, McCall has failed to identify any exceptions applicable to his hearsay averment and thus it will not be considered regarding St. Luke's motion for summary judgment.

Second, McCall's deposition testimony that he received written clearance from his physician to return to work in May 2018 is inadmissible

under the best evidence rule, as codified at Fed.R.Evid.1002. "[A] party [must] produce original documents if a witness testifies to the actual content of a writing." *United States v. Miller*, 248 F. App'x 426, 429 (3d Cir. 2007). Federal Rule of Evidence 1004 provides an exception to this original document requirement where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed.R.Evid. 1004; Fed. R. Evid. 1004 Adv. Comm. Notes on Proposed Rules ("…if failure to produce the original is satisfactorily explained, secondary evidence is admissible."). Here, the only explanation that McCall offers in addressing his failure to produce the original letter, or even a copy of such letter, is that he has lost it and "has no idea where it could be." (Doc. 55-3 at 52:11-15). He fails to point to any evidence which could explain why the letter was lost or destroyed and the court could not locate any such evidence in the record.[1] Thus, McCall fails to satisfactorily explain why "all the originals are lost or destroyed, and not by the proponent acting in bad faith" and the court will not consider McCall's testimony regarding his receipt of written clearance in May 2018, insofar it is offered to prove the contents of the writing, for the purposes of this summary judgment motion. Fed.R.Evid. 1004(a).

---

[1] Furthermore, we note that neither of the litigants has deposed any of McCall's physicians and has made no indication of an intention to examine his physician as a witness at trial.

Nonetheless, there appears to be sufficient evidence to preclude summary judgment on the basis of McCall's ability to perform the essential functions of his job in May 2018. Initially, McCall has testified to providing St. Luke's medical clearance to return to work in May 2018. (Doc. 55-3 at 62:11-19). Further, the record contains evidence suggestive of McCall's ability to return to work in May 2018. A medical indicated that, as of March 6, 2018 McCall was on course to return to work on May 21, 2018, as originally scheduled. (Docs. 55-15; 55-16, 44-10). Holmberg testified that based upon her knowledge as a nurse and the progression of McCall's ankle condition, she believed that McCall was "medically stable" enough to return to work in May 2018. (Doc 55-25 at 82:18-83:1). Moreover, McCall testified that, in June to August of 2018 and at the time of his deposition, he had worked as a tax collector, a position he performed for approximately 25 to 30 hours per week in an office. (Doc. 55-3 at 47:2-19, 67:23-69:9). He further testified that, as of his deposition, he had not applied for social security disability benefits as he was able to perform paid work as a tax collector. *Id.* at 46:12-22.

St. Luke's argues that McCall's failure to produce record evidence of clearance from his physician to return to work in May 2018 is conclusive of his inability to return to work at that time. The court is not so persuaded. In support of its argument, St. Luke's cites to *Williams v. Pinnacle Health Family*

*Care Middletown*, No. 18-CV-00722, 2020 WL 8991688 (M.D.Pa. March 18, 2020), *aff'd*, 852 Fed.Appx. 678 and *Krensavage v. Bayer Corp.*, No. 02:04cv1476, 2006 WL 2794562 (W.D.Pa. Sept. 27, 2006), *aff'd*, 314 F.App'x 421. In *Krensavage v. Bayer Corp.*, the district court found that the plaintiff was not qualified under the ADA based upon her admission to being completely disabled, as well as the fact that several doctors certified that she was totally disabled and unable to return to work. *Krensavage*, 2006 WL 2794562, at *10. Similarly, in *Williams v. Pinnacle*, the district court found that the plaintiff was not qualified under the ADA on the grounds that the plaintiff did not receive medical clearance to return to work and that her health indisputably continued to decline, rendering her totally disabled and eligible for disability benefits. *Williams*, 2020 WL 8991688, at *10-12. Neither *Williams* nor *Krensavage* goes so far as to conclude that a lack of medical clearance to return to work alone is sufficient to demonstrate that an employee is not a qualified individual under the ADA.

Moreover, in contrast to the facts presented in *Williams* and *Krensavage*, the present record indicates that while McCall's ankle condition ultimately deteriorated, McCall did not become completely disabled. The record contains evidence which suggests that McCall's ankle condition improved between May to August 2018. (Doc. 55-3 at 47:2-19, 67:23-69:9).

Given the aforementioned evidence, the court finds the existence of a genuine factual dispute as to whether McCall was able to perform the essential functions of his job in May 2018 or August 2018. As such, McCall has raised a material factual dispute as to whether he was a qualified individual under the ADA.

### ii.   Prima Facie Case for ADA Retaliation

In Count I of the amended complaint, McCall also claims that St. Luke's retaliated against him for requesting a reasonable accommodation for his disability in violation of the ADA.

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

Initially, McCall does not specify a protected employee activity for the purpose of his ADA retaliation claim. To the extent that Dr. McGarrity's December 23, 2017 medical note amounted to a request for an accommodation under the ADA, as McCall alleges under his reasonable accommodation claim, such a request constitutes a protected employee

- 23 -

activity. *Allen v. Lackawanna Cty. Bd. of Commissioners*, 2019 WL 4621276, at *6 (M.D. Pa. Aug. 23, 2019) ("With respect to the first element of a prima facie retaliation claim, a good-faith request for an accommodation constitutes protected employee activity under the ADA"), *adopted as modified*, 2019 WL 4644244 (M.D. Pa. Sept. 23, 2019) (*citing Shellenberger*, 318 F.3d 183, 191 (3d Cir. 2003)).

However, even if the December 23, 2017 medical note constituted a request for accommodation, McCall cannot establish a causal connection between his request and the adverse employment actions. The time between Dr. McGarrity's December 23, 2017 medical note and the alleged filling of McCall's position in May 2018, approximately five months later, is too great to allow a reasonable inference of causality. *See Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280 (3d Cir. 2000) ("[T]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'") (*citing Krouse,* 126 F.3d at 503); *Krouse,* 126 F.3d at 503 (discussing that mere fact that adverse action occurs after protected activity does not establish causal link without more and collecting cases); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (causal link established where "discharge followed rapidly, only two days later, upon Avdel's receipt of notice of Jalil's EEOC claim"). It

thus follows that he also cannot establish temporal proximity between his alleged request and his termination on August 23, 2018.

Moreover, McCall does not point to any evidence of retaliatory animus during the intervening period upon which a retaliatory motive may be inferred, and the court does not find any such evidence in the record. *Krouse,* 126 F.3d at 503 ("When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.").

Consequently, the court finds that McCall has failed to establish a genuine issue of fact as to St. Luke's alleged retaliation against the exercise of his rights under the ADA because he cannot show a causal relationship between his alleged request for accommodation made on December 23, 2017 and St. Luke's adverse actions. Accordingly, the court will grant St. Luke's motion for summary judgment with respect to McCall's ADA retaliation claim in Count I of the amended complaint.

            iii.    *Legitimate, Non-Discriminatory Reason; Pretext*

For the reasons previously discussed, McCall has made a *prima facie* case for his ADA discrimination claim. Under the *McDonnell Douglas* burden-shifting framework, after a plaintiff has met its burden in establishing a *prima facie* case, "the burden shifts to the employer to provide a legitimate non-

retaliatory reason for its conduct." *Carvalho-Grevious, 851 F.3d 249, 257* (3d Cir. 2017).

If the employer meets its burden, the burden of production shifts back to the plaintiff to establish that the reason proffered by the employer is a pretext for discrimination. In other words, the plaintiff must point to evidence from which a factfinder could reasonably "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "This is ordinarily done by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir. 1997) (internal quotation marks and citations omitted).

St. Luke' contends that it provided legitimate non-discriminatory reasons for McCall's termination and McCall cannot show pretext. The court disagrees.

Initially, St. Luke's has met its burden of providing a legitimate, non-discriminatory reason for terminating McCall, specifically that McCall

"exhausted his FMLA leave, exhausted his 270 days of medical leave, did not have medical clearance to return at the expiration of same, and failed to take any steps to identify a position at St. Luke's that he was qualified and able to perform." (Doc. 47 at 17). St. Luke's further argues that McCall's position was filled in May 2018 because St. Luke's needed to find a replacement for McCall in order to maintain normal business operations.

However, it appears that McCall has pointed to evidence from which a factfinder could reasonably disbelieve St. Luke's articulated non-discriminatory reasons. Regarding St. Luke's allegation that McCall could not have returned to his position in May 2018 because it was filled, McCall has pointed to sufficient inconsistencies in the record to cast doubt on whether his position remained open at the time of his termination on August 23, 2018. Namely, Stehman and Holmberg provided contradicting testimonies as to whether McCall's position was actually filled and no longer available prior to September 2018. (Doc. 55-24 at 80:20-24; Doc. 55-25 at 87:4-10).

McCall also points to evidence on the record which would allow a reasonable jury to disbelieve that McCall's alleged failure to produce medical clearance and identify another position for which he was qualified were non-pretextual reasons for McCall's termination. McCall points to Stehman's deposition testimony, wherein she affirmed that, after McCall's 270 days of

medical leave was exhausted in August 2018, she told McCall that she would hold off on separating his employment so that he could attain updated documentation from his physician. (Doc. 55-24 at 4-8). It is undisputed that McCall was able to provide medical clearance to perform sedentary work on August 23, 2018 and was terminated on the same day. Given sufficient evidence casts doubt to whether McCall's position remained available in August 2018 and Stehman's representation to McCall that his employment would not be separated so that he could attain an updated medical prognosis, a jury could reasonably disbelieve St. Luke's proffered reasons for terminating McCall.

Further, McCall contends that he did provide proof of his medical clearance and identified a position at St. Luke's for which he was qualified in May 2018. In support of his claim, McCall relies upon his own testimony that he had provided St. Luke's medical clearance from Dr. O'Connor in May 2018. (Doc. 55-3 at 62:11-19). McCall further testified that on May 17, 2018, upon telling Stehman that he was able to return to work, Stehman told him that there was no position for him to return to, advised him to not worry about his job, and assured him that St. Luke's would find another position for him. *Id.* at 54:17-55:7. McCall testified that, during the same conversation with Stehman, he indicated that he would be able to work at St. Luke's new

Lansford campus, which he believed was anticipated to begin training employees in July 2018. *Id.* at 59:20-60:4.

Although St. Luke's insists that it had legitimate reasons for terminating McCall, at this stage the court is constrained to consider the evidence in the light most favorable to the plaintiff. In light of the record, McCall appears to have carried his burden of presenting enough evidence which could allow a factfinder to disbelieve St. Luke's regarding its reasons for terminating McCall, or believe that it is more likely than not that the decision was motivated by McCall's alleged disability. As such, the court finds that summary judgment under this step of the *McDonnell Douglas* framework to be inappropriate and thus St. Luke's motion for summary judgment on McCall's discrimination claim under the ADA will be denied.

### b. *ADA Failure to Accommodate Claim (Count I)*

Under Count I of the amended complaint plaintiff also asserts that St. Luke's failed to accommodate his disability pursuant to the ADA. McCall claims that he requested a reasonable accommodation by way of Dr. McGarrity's December 28, 2017 medical note, which stated that McCall would be out of work for "several months" due to his ankle condition. (Doc. 55-16). McCall argues that St. Luke's failed to accommodate his disability because it failed to engage in the interactive process and eventually

terminated him. Having reviewed the evidence and the parties' arguments, the court finds that summary judgment on this claim is inappropriate.

An employer can be liable for discrimination under the ADA if it does not make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. §12112(b)(5)(A). Failure to accommodate claims under the ADA are not evaluated using the *McDonnell Douglas* framework since such claims do not require any evidence or inference of intentional discrimination. *Walton v. Mental Health Assn. of Southeastern Pennsylvania,* No. CIV.A. 96–5682, 1997 WL 717053, at \*10 (E.D.Pa. Nov. 17, 1997) (*citing Bultemeyer v. Fort Wayne Community Sch.,* 100 F.3d 1281, 1283 (7th Cir. 1996); *Brown v. Lankenau Hosp.,* 1997 WL 277354, at \*8 (E.D.Pa. May 19, 1997)). "Instead, for the purposes of summary judgment, the court must evaluate whether the facts presented by the nonmoving party, if taken as true, could establish failure to accommodate in violation of the ADA." *Id.*

"'An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or

assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'" *Moore v. CVS Rx Servs., Inc.*, 142 F.Supp.3d 321, 335 (M.D. Pa. 2015) (*quoting Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004)).

The parties do not dispute that St. Luke's knew about McCall's disability. Rather, at dispute is whether McCall requested an accommodation and if he could have been reasonably accommodated. St. Luke's argues that McCall never gave notice of a request, and even if he did, his alleged request was not reasonable because it constituted a request for indefinite leave and that McCall had failed to establish the existence of an appropriate position into which he could have been transferred.[2]

---

[2] St. Luke's further argues that it was not obligated to engage in the interactive process because McCall was not a "qualified individual" under the ADA. *Hohider v. United Parcel Serv., Inc.*, 570 F.3d 169, 193 (3d Cir. 2009) ("if the employee is not a qualified individual under the ADA, ... [the employer's] alleged failure to investigate into reasonable accommodation is unimportant.") (citations and internal quotations omitted). For the reasons previously discussed herein, the court finds a triable issue of fact as to whether McCall was a qualified individual for the purpose of the ADA.

### i.   *Accommodation Request*

McCall asserts that Dr. McGarrity's December 28, 2017 medical note, which stated that McCall would be out of work for "several months," constitutes a request for accommodation, as it had made St. Luke's "aware that Plaintiff could perform the essential functions of his position with the reasonable accommodation of a brief extension of job protected medical leave." (Doc. 55 at 27). St. Luke's, in seeking summary judgment, argues that McCall's Dr. McGarrity's medical note does not constitute a request for accommodation.

"A leave of absence for medical treatment may constitute a reasonable accommodation under the ADA." *Bernhard v. Brown & Brown of Lehigh Valley, Inc.,* 720 F.Supp.2d 694, 700 (E.D.Pa. 2010) (*citing Conoshenti v. Public Serv. Elec. & Gas Co.,* 364 F.3d 135, 151 (3d Cir. 2004)); *see also Shannon v. City of Philadelphia,* No. 98–5277, 1999 WL 1065210, at *6 (E.D.Pa. Nov. 23, 1999) ("the court finds that a reasonable jury could conclude that [plaintiff's] request for an additional three months of unpaid leave for medical treatment was a reasonable accommodation.").

An employee's request for accommodation need not be formal, invoke the ADA or mention the words "reasonable accommodation." *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 313 (3d Cir. 1999). Rather, what

matters under the ADA is whether the employee "provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Id.* Circumstances thus may require "the employer…to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." *Conneen,* 334 F.3d at 332 (*citing Bultemeyer v. Fort Wayne Cmty. Sch.,* 100 F.3d 1281, 1285 (7th Cir. 1996)). However, "either by direct communication or other appropriate means, the employee must make clear that the employee wants assistance for his or her disability." *Jones v. United Parcel Serv.,* 214 F.3d 402, 408 (3d Cir. 2000) (quotations and citations omitted). There is "nothing in the ADA [that] mandates an employer to speculate as to the extent of [an employee's] disability or [his] need or desire for an accommodation simply because it is aware that he is ill." *Conneen v. MBNA America Bank, N.A.,* 182 F.Supp.2d 370, 378 (D.Del. 2002) (internal quotations and citation omitted).

Viewing in the light most favorable to McCall, the record raises a triable issue of fact as to whether Dr. McGarrity's medical note dated December 28, 2017 constituted a request for accommodation. Here, it is undisputed that St. Luke's was aware of McCall's ankle condition prior to receipt of Dr.

McGarrity's letter. Further, Dr. McGarrity's medical note attributed McCall's needing to be out of work for several months to his ankle issue, which McCall's Leave of Absence Request Form dated November 20, 2017 had indicated would require a reduced work schedule for four to six months. (Doc. 55-1 at ¶15; Doc. 44-10). On the basis of Dr. McGarrity's December 28, 2017 medical note and McCall's Leave of Absence Request Form, the court cannot conclude as a matter of law that McCall did not request an accommodation in the form of job-protected leave. *McCall v. City of Philadelphia*, 629 Fed.Appx. 419, 421 (3d Cir. 2015) (indicating constructive notice of a desire for accommodation can be inferred from record evidence); *Penson v. Philadelphia Presbytery Homes, Inc., NO. 17-1981, 2018 WL 4561614, at *7 (E.D.Pa. Sept. 12, 2018)* (factual dispute existed as to whether plaintiff requested an accommodation where plaintiff testified to not having requested an accommodation but also provided testimony which "either specifically or by strong implication, would allow a jury to find that he did request an accommodation"); *Bernhard*, 720 F.Supp.2d at 701-02 (finding employee provided sufficient evidence of request for accommodation where he notified his employer that he would be "unable to return to work for at least three more months," and needed to "be on long term disability for a minimum of three months"); *Jones v. United Parcel Serv.*,

- 34 -

214 F.3d 402, 408 (3d Cir. 2000) (finding employee did not request an accommodation where the employer was only aware of employee's belief that he could not return to his former job and his disability precluded him from returning to work at employer).

St. Luke's next argues that even if McGarrity's medical note constituted a request for leave, it reasonably construed his request for leave as a request for indefinite leave. To the extent Dr. McGarrity's December 28, 2017 letter constituted a request for accommodation, the court cannot determine at summary judgment stage whether the request was for indefinite leave. While courts have found that an extended leave of absence may constitute a reasonable accommodation, a request for an open-ended and indefinite leave is not a reasonable accommodation. *Fogleman v. Greater Hazleton Health Alliance*, 122 F. App'x 581, 58 (*citing Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004). Courts have found a request for leave to be indefinite where the employee presents no evidence of the expected duration of the requested leave and no indication of a favorable medical prognosis. *Shannon v. City of Philadelphia,* No. CIV.A.98–5277, 1999 WL 1065210 (E.D.Pa. Nov. 23, 1999); *Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1169 (10th Cir. 1996).

Here, there is a triable issue of fact as to whether McCall's December 28, 2017 notice of needing to be out of work for "several months" constitutes a request for indefinite leave and thus was not a reasonable request for accommodation. Evidence indicates that St. Luke's was informed that McCall was operating under the expectation that his medical condition would last until May 21, 2018. (Doc. 44-10). Under these circumstances, whether McCall's leave request was "indefinite" is premature to rule on as a matter of law and is a question for the jury. *Compare Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F.Supp.2d 694 (E.D.Pa. 2010) (whether employee's request for "at least three months" of leave was reasonable rather than indefinite is a "quintessential jury question"); *Gibson v. Lafayette Manor, Inc.*, No. 05–1082, 2007 WL 951473, at *7 (E.D.Pa. March 27, 2007) (noting an employer may have "put the cart before the horse" where it assumed a physician's letter stating employee could not work for six to eight weeks constituted an indefinite request for leave and thereafter failed to participate in the interactive process).

The record also appears to raise a material factual dispute as to whether St. Luke's participated in the interactive process in good faith. Both employer and employee have a duty to act in good faith in searching for an

appropriate reasonable accommodation.[3] *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997). McCall claims that, rather than engaging in the interactive process upon receiving Dr. McGarrity's December 28, 2017 letter, St. Luke's failed to request from him any additional information about his prognosis for recovery or length of extended leave requested. Stehman testified that, prior to making the decision to post McCall's employment in February 2018, she did not reach out to McCall for any additional information about when he was anticipating clearance to return to work. (Doc. 55-24 at 73:10-15). St. Luke's Human Resources Specialist Carol Evans ("Evans") also testified she did not reach out to McCall regarding the status of his return to work or medical condition between December 28, 2017 and the posting of his position in February 2018. (Doc. 55-23 at 65:25-4). McCall further testified that in May 2018, Stehman informed him that his job was filled and that there were no other positions available for him. (Doc. 55-3 at 55:5-20).

---

[3] The Third Circuit has held that employers can demonstrate "good faith" by taking steps such as "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some signs of having considered employee's request, and offer[ing] to discuss available alternatives when the request is too burdensome." Taylor, 184 F.3d at 317 (alterations added).

In light of such evidence, a reasonable fact-finder could conclude that McCall requested an accommodation and St. Luke's in turn failed to engage in the interactive process in good faith.

### ii. Reasonably Accommodated

St. Luke's argues that even if McCall had requested an accommodation, there were no reasonable accommodations that would have enabled McCall to return to work because he did not receive medical clearance to return to work prior to exhausting his medical leave and failed to identify another position for which he was qualified at any point prior to his termination.

For the reasons previously discussed in connection with McCall's claim for discrimination under the ADA, there appears to be a triable issue of fact as to whether McCall received medical clearance to return to work,[4] and whether McCall identified another position for which he was qualified prior to his termination.[5]

---

[4]   McCall testified to having given St. Luke's medical clearance to return to work in May 2018. (Doc. 55-3 at 62:11-19).

[5]   The court notes that "[i]f the employee cannot be reasonably accommodated in her previous position, []he must identify another position that is vacant and funded, at or below h[is] level, for which []he is qualified to perform the essential functions." *Castellani v. Bucks Cty. Municipality*, 351 F.App'x, 774, 777 (3d Cir. 2009) (citation omitted). While "an employee need not identify an open position before the employer's duty to engage in the interactive process attaches," if following an opportunity for discovery, "the

Accordingly, the court will deny St. Luke's motion for summary judgment as to McCall's reasonable accommodation claim under the ADA.

### c. *PHRA Discrimination and Retaliation (Count II)*

Because the PHRA is generally interpreted "in accord with its federal counterparts," the legal analysis of McCall's ADA claims applies to his PHRA claims. *See Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir. 1996) (citations omitted). Accordingly, for the reasons previously discussed in connection with McCall's ADA claims, the court will grant St. Luke's summary judgment motion with respect to McCall's PHRA claims of retaliation and deny the motion with respect to McCall's PHRA claims of discrimination and accommodation.

---

employee has still not identified a position into which []he could have transferred, the court must grant summary judgment in favor of the defendant." *Id.* (citation omitted).

Here, McCall testified that, in May 2018, he told Stehman that could be transferred to St. Luke's campus at Lansford, Pennsylvania. (Doc. 55-3 at 59:20-60:4). He further testified that while the Lansford campus was not yet open in May 2018, employee training was anticipated to start in July 2018. *Id.* Given McCall's testimony, there appears to be a triable factual issue as to whether there was another position which McCall was qualified for on or before his termination.

### d. *FMLA retaliation (Count III)*

In Count III of his amended complaint, McCall asserts that St. Luke's filling of his position and termination of his employment was in retaliation for exercising his FMLA rights.

"Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Lichtenstein*, 691 F.3d at 302. "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichentenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-302 (3d Cir. 2012).

Claims based on direct evidence have been assessed under the mixed-motive framework set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 276–77 (1989), and claims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). To the extent that McCall argues that the Policy constitutes direct evidence of discrimination for the purposes of his FMLA retaliation claim, the court is not so persuaded for the reasons discussed in connection with McCall's ADA claims. Because

McCall presents no other direct evidence, the court proceeds to assess his FMLA claim under the *McDonnell Douglas* burden-shifting framework.

Under the *McDonnell Douglas*' framework, the employee must first establish a *prima facie* case before any burden shifts to the employer. *Id.* To state a *prima facie* case of FMLA retaliation, a plaintiff must "show that (1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). If the plaintiff establishes a *prima facie* case of retaliation, "the burden of production shifts to [the employer] to articulate some legitimate, nondiscriminatory reason for its decision. If [the employer] meets this minimal burden, [the employee] must point to some evidence, direct or circumstantial, from which a factfinder could reasonably... disbelieve [the employer's] articulated reasons." *Lichentenstein*, 691 F.3d at 302-03).

St. Luke's does not dispute the first two elements of a *prima facie* case. Instead, it contends McCall cannot show a temporal proximity to establish causation because St. Luke's did not formally terminate McCall until August 28, 2018, approximately six months after McCall exhausted his FMLA leave on February 20, 2018. St. Luke's further argues the record is devoid of evidence suggesting either that it engaged in a pattern of antagonism against

McCall or that an inference of causation could otherwise be raised. The court agrees and finds that McCall cannot establish that an adverse decision was causally related to his FMLA leave.

Courts generally focus on "two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *See Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). "If the timing of the alleged retaliatory action is 'unusually suggestive of retaliatory motive' a causal link will be inferred." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). Courts have found a period of two days to three weeks constitutes unusually suggestive temporary proximity. *See Lichtenstein*, 691 F.3d at 307 (summarizing cases). Courts may also infer causation where an employer engages in a pattern of antagonism between the protected behavior and subsequent adverse employment action. *Abramson*, 260 F.3d at 288. Further, temporal proximity and evidence of antagonism "are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (citation omitted).

Here, McCall's FMLA leave was exhausted on February 10, 2018. (Doc. 55-17). Ten days later, St. Luke's wrote to McCall that it would "make

every effort to hold the employee's position" during his medical leave of absence but will nevertheless seek a replacement for his position. *Id.* For the reasons previously discussed in connection with McCall's ADA claim, the earliest adverse action that McCall has established is the alleged filling of McCall's position in May 2018. However, the approximately three-month period between the exhaustion of McCall's FMLA leave in February 2018 and the alleged filling of his position in May 2018 is not indicative of an unusually suggestive temporal proximity. *See, e.g. Lichtenstein*, 691 F.3d at 307 (collecting cases). Accordingly, McCall has produced insufficient evidence to demonstrate timing that is "unusually suggestive of retaliatory motive." *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 189 n.9 (3d Cir. 2003).

Further, considering the record in the light most favorable to McCall, a factfinder could not reasonably find that St. Luke's engaged in a "pattern of antagonism" from which causation can be inferred. *Abramson*, 260 F.3d at 288. McCall does not specifically argue that there is a pattern of antagonism. It moreover appears to the court that the only evidence of antagonism present in the record is an email from Evans to Stehman dated August 17, 2017, in which Evans informed Stehman that McCall was scheduled for surgery. (Doc. 55-8); Fed.R.Civ.P. 56(c)(3). Evans wrote, "I did make him

aware if it was related to his FMLA, we would need updated restrictions. Seems McCall is trying to be a problem child." (Doc. 55-8). While the content of this letter could be reasonably construed as an instance of antagonism on the part of St. Luke's, in the absence of additional circumstantial evidence of antagonistic conduct, the record does not suggest a "pattern of antagonism." Moreover, the proffered evidence, when considered as a whole, is not suggestive of causation.

Lastly, while McCall does not specifically assert a claim of FMLA interference, St. Luke's opposes such a claim to the extent it is asserted. To establish an interference claim under the FMLA, the "employee need only show that he was entitled to benefits under the FMLA and that he was denied them." _Sommer v. The Vanguard Grp.,_ 461 F.3d 397, 399 (3d Cir. 2006) (citations and quotations omitted). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." _Commer v. The Vanguard Group,_ 461 F.3d 397 (3d Cir. 2006) (internal quotations and citations omitted). The U.S. Department of Labor has stated that FMLA interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" and "manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. §825.220(b). Because the

FMLA is not about discrimination, a *McDonnell–Douglas* burden-shifting analysis is not required." *Id.* (citations omitted).

St. Luke's is entitled to summary judgment here because the undisputed record indicates that St. Luke's was not denied any FMLA benefits. McCall does not point to, and the court does not find, any evidence indicating that St. Luke's refused to authorize McCall's requests for FMLA leave, discouraged McCall from using his FMLA leave, or attempted to avoid its responsibilities under the FMLA. On the contrary, McCall exhausted his FMLA leave entitlement. As a result, to the extent McCall assert a claim for FMLA interference, such a claim cannot survive summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, St. Luke's motion for summary judgment, (Doc. 43), is **GRANTED** with respect to McCall's retaliation claim under the ADA and PHRA in Counts I and II, as well as McCall's FMLA claims in Count III of the amended complaint. St. Luke's motion for summary judgment is otherwise **DENIED** in all other respects.

An appropriate order follows.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: August 23, 2022**
19-2052-02